E-FILED
Tuesday, 28 February, 2006  02:08:06 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SUE ALTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-3074 |
| | ) | |
| THOMAS BENIGNO, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on cross motions for summary judgment. <u>Defendant Benigno's Motion for Summary Judgment (d/e 56) (Defendant's Motion)</u>; <u>Plaintiff's Second Motion for Summary Judgment (d/e 90) (Plaintiff's Motion)</u>. Plaintiff Sue Altman has filed the instant action pursuant to 42 U.S.C. § 1983 claiming a violation of her due process rights under the Fourteenth Amendment of the United States Constitution. Altman complains that her personnel file showed that she received a general salary increase in both December 2002 and December 2003, but both increases were taken away without Altman's knowledge. She received no notice or hearing, formal or informal, before such personnel actions

1

occurred.  Altman relies on the Secretary of State's Pay Plan as the basis from which she derives her property interest in the December 2002 and December 2003 salary increases.  Defendant Thomas Benigno is the Chief of Staff of the Illinois Secretary of State's Office.  Altman contends that Defendant Thomas Benigno's failure to abide by the terms of the Pay Plan with respect to the December 2002 and December 2003 salary increases violated her property interests.  She further argues that Defendant Benigno initiated a conspiracy with other employees to deprive her of the benefits of such increases.

Defendant Benigno contends that Altman had no property interest in either the December 2002 or December 2003 salary increase because he specifically did not authorize such an increase for Altman.[1]  In the alternative, Defendant argues that, even if Altman has such an interest, she has not exhausted her administrative remedies and her claim is barred by the doctrine of qualified immunity.  Benigno further contends that he was not personally involved in the alleged constitutional violations against

---

[1]The Court notes that Defendant's Motion for Summary Judgment (d/e 56) was initially filed by Defendants Benigno and Jacqueline Dicianni.  However, on Plaintiff's own motion, the Court dismissed Dicianni as a party Defendant.  Therefore, Defendant's Summary Judgment Motion will only be considered filed by Defendant Benigno.

Altman.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, but Defendant's Motion for Summary Judgment is ALLOWED.  Because the undisputed facts show that the Due Process Clause is not implicated in this case, judgment is entered in favor of Defendant Benigno.

## STATEMENT OF FACTS

On February 18, 2000, Altman was hired as the manager of the Organ/Tissue Donor Program with a personnel title of Executive II at the Office of the Illinois Secretary of State (Secretary's Office).  The terms of the offer specified that Altman was to be promoted to Executive III, with a corresponding increase in pay, after six months of employment.  Both the Executive II and III classifications are merit compensation positions.  All merit compensation positions are governed by the Pay Plan of the Secretary of State, which is part of the Administrative Code of the State of Illinois. The Pay Plan provides, in part, as follows:

### INTRODUCTION

The Department of Personnel shall determine the proper interpretation and application of each provision of the Pay Plan. The decision of the Director of Personnel as to the proper interpretation or application of any such provision shall be final and binding upon all departments and employees affected

thereby, and all departments and employees shall comply with the Director's decision, unless or until modified or reversed by the Attorney General or a written directive of the Merit Commission or a court order declaring the Director's decision to be unlawful.

## PART I - NARRATIVE

SECTION 1:00          STATUTORY AUTHORITY

Section 10a(2) of the Secretary of State Merit Employment Code.

Section 420.220(a) of the Rules of the Department of Personnel.

SECTION 2:00          POLICY AND RESPONSIBILITY

It is the policy of the Office of the Secretary of State to provide fair and reasonable compensation to employees for services rendered.

A.  The policy and procedures expressed herein are controlling in matters of employee pay administration.  It shall be the responsibility of each department director:

1.  To cause, within the department, full compliance with all provisions of this Pay Plan, and

2.  To promptly submit all proper and required personnel actions with justifications and other notices of changes affecting employee pay or pay status.

B.  It shall be the responsibility of the Department of Personnel:

1.  To develop procedures and techniques as required for the implementation and standardization of the Pay Plan.

2.  To develop and maintain classification standards and salary rankings for all positions subject to the Pay Plan.

Subject to the appropriations approved by the General Assembly and signed by the Governor, the salary rates shall be established and may be adjusted annually to reflect changes in the economy.  The Department of Personnel, in conjunction with the Department of Budget and Fiscal, shall issue tentative guidelines to cover the next Fiscal Year not later than July 1, and final guidelines shall be issued not more than 90 days after the appropriations are signed by the Governor.

3.  To review and approve employees' rates of pay and personnel changes for compliance with established policy and procedures.

\*\*\*

Section 9:00            PROVISIONS FOR INCREASES IN PAY

After the effective date of this Plan, or as hereafter amended, increases granted to employees occupying positions in classes that are paid in conformance with this Pay Plan, shall become effective the first date of the pay period occurring after the date of approval:

A.  General Increases - Upon granting of a general increase, the base salary of each employee shall be advanced by the flat dollar amount or the percentage of the base salary as approved by the Secretary of State.  In no event is the resulting salary to be lower than the minimum rate or greater than the maximum of the salary range.  The employee's creditable service date shall not be changed.[2]

---

[2]The Pay Plan defines a general increase as follows: "An increase, either flat dollar amount added to the base salary OR percentage of the base salary, granted to all employees covered by this Pay Plan."  Defendant's Response to Plaintiff's First Motion for Summary Judgment (d/e 74) (Defendant's Response to Plaintiff's First Motion), Exhibit R, Pay Plan at 7.

B.  Merit Increases (Merit Compensation/Range Grades)

1.  An evaluation of performance shall be conducted each time an employee receives a merit increase, one month prior to the employee's creditable service date.

2.  The evaluation of the employee's performance shall be performed by the employee's immediate supervisor. Should the immediate supervisor be unavailable at the time of evaluation, the next higher-level supervisor shall conduct the evaluation and discuss the results with the employee.

3.  Providing funds are available, the evaluator will make a recommendation as to the appropriate salary increase by comparing the individual's overall performance rating with either Merit Increase Guide Chart (PART III) or the applicable portion of the pertinent collective bargaining agreement.

4.  At the discretion of the employing department, recommendations for salary increases and performance evaluations may require approval of a Departmental Compensation Review Committee.

5.  Performance evaluations shall have the signature of the employing department director and will be forwarded to the Department of Personnel for review no later than two weeks prior to the effective date of the increase.

\* \* \*

SECTION 11:00              PROVISIONS FOR DECREASES IN PAY

Employees occupying positions whose salaries are determined by this Pay Plan shall have their salaries reduced only as specified below and such reductions shall become effective the first day of the pay period

following date of approval:

* * *

D.   Salary Adjustment - Downward - An employee may receive a downward adjustment in base salary for the purpose of "correcting a previous error or oversight" or when required "in the best interests of the department and the Office of the Secretary of State." Adjustments must have prior written approval of the Director of Personnel. In determining the appropriateness of a request for a salary adjustment-downward, the Director of Personnel will consider whether the need for the adjustment is substantiated, whether the action is consistent with the treatment of other similar situations and whether the action is equitable in view of the particular circumstances prompting the request. This adjustment will not change the employee's creditable service date.

Defendant's Response to Plaintiff's First Motion for Summary Judgment (d/e 74) (Defendant's Response to Plaintiff's First Motion), Exhibit R, Pay Plan at 1,2,9,10, & 17.

At the end of six months of employment, Altman documented her work duties to show that she was working at the level of an Executive III. Altman was performing the same duties as the previous Organ/Tissue Donor Program manager who was classified as an Executive III. She submitted this documentation to her supervisor, who recommended that she be reallocated to an Executive III position. According to Altman, Defendant Benigno repeatedly denied this request.

In March 2002, Altman submitted an audit/reallocation request to Tina Prose, head of personnel at the Secretary's Office.  Her request was acknowledged as received on April 4, 2002.  After receiving no further response to the March 2002 audit/reallocation request, Altman filed a request with the Secretary of State Merit Commission (Merit Commission) asking for the job audit.  Subsequently, the Secretary's Office performed the job audit and found that Altman should be reallocated to an Executive III personnel title.

In December 2002, certain merit compensation employees at the Secretary's Office received salary increases.  The decision to give salary increases to certain employees at the Secretary's Office was made by Benigno.  Benigno states that, based on the information provided by directors of the various departments within the Secretary's Office, he decided that at least 40 merit compensation employees, including Altman, would not receive the December 2002 increase.  He states that the names of these employees were given to Stephan Roth, senior legal advisor for the Secretary of State's Personnel Department.  Thereafter, someone in the transactions unit of the Personnel Department entered the salary increases into the computer as general increases.  Roth states in his affidavit that

"[t]he decision as to how the [salary] increases will be entered into the computer system is made within the Department of Personnel." Defendant's Response to Plaintiff's First Motion, Exhibit K, Affidavit of Stephan Roth (Roth Affidavit), ¶ 3.  He further states that "[t]he Executive Office provided the names of [m]erit [c]ompensation employees who were not to receive an increase.  The Executive Office, however, did not instruct the Department of Personnel to enter the increase as a 'General Increase.'" Id. at ¶ 4.  According to Benigno, he was not in any way involved in the decision to label the increases as general increases; the transactions unit was involved with that decision.   Defendant's Response to Plaintiff's First Motion, Exhibit A, Deposition of Thomas Benigno (Benigno Deposition) at 54-55.  Benigno states that he never approved the increases to be entered as general increases and had no knowledge that the increases were entered as such.   Defendant's Response to Plaintiff's First Motion, Exhibit F, Affidavit of Thomas Benigno (Benigno Affidavit), ¶ 5; Benigno Deposition at 59-60.  According to Benigno, he intended that the 2002 pay increase be a discretionary increase, rather than a general increase, because not all merit compensation employees were entitled to it.  Benigno Deposition at 46.

Roth testified that in January 2003, he and Diana Underwood, head

of the transactions unit of the Personnel Department, determined that it would be more appropriate to relabel the 2002 salary increase as a salary adjustment. <u>Defendant's Response to Plaintiff's First Motion</u>, Exhibit C, <u>Deposition of Steve Roth (Roth Deposition)</u> at 39-40; <u>Roth Affidavit</u>, ¶ 5. This was because, according to the Pay Plan, a general increase was an across the board increase, whereas the 2002 salary increases were not authorized for all merit compensation employees. After this determination, Roth testified that the transactions unit made the changes in the computer system and reclassified the 2002 increase as a salary adjustment. <u>Roth Deposition</u> at 42-43.

On March 7, 2003, the Secretary's Office reallocated Altman to an Executive III personnel position, retroactive to February 1, 2003.[3] In March 2003, Altman was removed as manager of the Organ/Tissue Donor program and subsequently assigned to the Division of Driver Responsibility. From March 2003 through September 2003, Altman states that she was given no significant duties. In October 2003, Altman became the acting manager of the Emission/Tollway/Parking section of the Division of Driver

---

[3]The Amended Complaint (d/e 4) does not indicate when Altman's requested job audit took place.

Responsibility.

In the summer of 2003, Altman learned of the December 2002 salary increase.   <u>Defendant's Response to Plaintiff's First Motion</u>, Exhibit J, <u>Deposition of Sue Altman (Altman Deposition)</u> at 18.  Altman then asked to review her salary history.  <u>Id.</u> at 19.  On August 19, 2003, in reviewing her salary history, Altman learned that she had not received a salary increase in December 2002.  <u>Id.</u>  On August 25, 2003, she filed a grievance over the failure to have received a salary increase in December 2002.  <u>Id.</u> at 20. Michael Mayer, director of driver services, testified in his deposition that he responded to Altman's grievance after talking to either Roth or Susan Prevost, acting director of Personnel Department since the end of 2002, who told him that the 2002 increases were discretionary increases.[4] <u>Defendant's Response to Plaintiff's First Motion</u>, Exhibit P, <u>Deposition of Michael Mayer (Mayer Deposition)</u> at 81-82.  On August 26, 2003, Mayer told Altman that the salary increases were discretionary salary adjustments to which she was not entitled.  <u>Id.</u> at 82.  Relying on Mayer's response,

---

[4]Mayer testified in his deposition that in the process of verifying payroll, he found out that the employees at the Secretary's Office had received an increase.  <u>Mayer Deposition</u> at 73.  After Altman filed her grievance, Mayer learned that Altman had not received the general salary increase.  <u>Id.</u> at 76.  Mayer testified that his understanding of a general increase was that "there were some employees that did get an increase and some employees didn't get an increase."  <u>Id.</u> at 77.

Altman dropped her grievance.  Altman Deposition at 20.

In December 2003, certain merit compensation employees at the Secretary's Office again received a salary increase.  Benigno states that he decided that at least 32 merit compensation and exempt employees, including Altman, would not receive the increase.  Defendant's Motion at 1; Benigno Affidavit, ¶ 4.  Either Benigno or someone acting on his behalf communicated the list of the names of the employees not approved for the salary increase to someone in the Personnel Department.  The transactions unit of the Personnel Department entered the 2003 salary increases as general increases to all merit compensation employees.  Roth states in his affidavit that "[t]he decision as to how the [salary] increases will be [labeled] . . . is made within the Department of Personnel."  Roth Affidavit, ¶ 3.  Similarly, Benigno states that the decision to label the 2003 salary increases as general increases was solely made within the Personnel Department; he states that he had no knowledge that the 2003 increases were classified as general increases; on the contrary, he believed that the December 2003 increases were discretionary increases to which not all employees were entitled.  According to Benigno, as a time saving measure, the Personnel Department initially entered a general increase for all merit

compensation employees.  Benigno states that "[t]he 32 employees who were not to receive an increase were then simultaneously given a salary adjustment downward so that none of these employees ever received any money pursuant to the increase."  Defendant's Motion, ¶ 15; Roth Deposition at 46; Roth Affidavit, ¶ 7.  According to Benigno, the decision to give a salary adjustment downward to those employees who had not been authorized to receive the raise, including Altman, was again made solely within the Personnel Department.  Roth Affidavit, ¶ 7.

Either in December 2003 or in January 2004, Altman requested her personnel file, after she learned of the December 2003 salary increase. Altman Deposition at 22.  Upon reviewing her personnel file, Altman learned that the December 2002 salary increase was labeled a general increase, which under the Pay Plan should include a raise for all merit compensation employees, including Altman herself.  Id. at 24; Defendant's Motion, Exhibit H, 2002 Computer printout form.  The documents in Altman's personnel file showed that Altman was initially given a raise in December 2002, but it was taken away the same day.  Altman Deposition at 24.  These actions occurred without Altman's knowledge.  Similarly, Altman learned that the December 2003 salary increase was a general

increase which under the Pay Plan should apply to all merit compensation employees, including Altman herself. <u>Altman Deposition</u> at 25; <u>Plaintiff's First Motion for Summary Judgment (d/e 59) (Plaintiff's First Motion)</u>, Exhibit 3, <u>2003 Computer printout form</u>; <u>Defendant's Motion</u>, Exhibit I, <u>Personnel Action form</u>.  She further learned that she was initially given a raise in December 2003, but it was taken away the same day.  <u>Altman Deposition</u> at 25; <u>Personnel Action form</u>.  Both personnel actions occurred without Altman's knowledge.  Altman received no notice or hearing, formal or informal, before her December 2002 and December 2003 salary increases were taken away.

According to Altman, she filed a grievance over the failure to receive the December 2003 salary increase on January 21, 2004.  <u>Altman Deposition</u> at 30-31; <u>Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (d/e 102)</u>, Exhibit 45, <u>January 21, 2004, Grievance</u>.  By a letter dated February 10, 2004, Roth provided answers to Altman's questions about the December 2002 and December 2003 salary increases.  The letter states as follows:

> Your letter to Donna Leonard of January 22, 2004 has been referred to me for response.  Pursuant to the Freedom of Information Act, I provide the following:

1.    The increases that were provided to various employees in 2002 were salary adjustments under the Secretary of State Pay Plan.  Increases provided in 2003 were general increases with adjustments made to some of the increases.

2.    The increases for 2002 were implemented on December 16, 2002.  The increases for 2003 were effective December 1, 2003.

3.    The increases given varied from employee to employee.

4.    As we do not keep the information as to the number of increases by classification in our ordinary course of business, the information requested cannot be provided.

5.    Similarly, as we do not keep the information as to the number of individuals by classification who were not given increases, in our ordinary course of business, the information requested cannot be provided.

6.    Decisions regarding increase were made by the Executive Office and presented to the Department of Budget & Fiscal Management and the Department of Personnel.

7.    Contrary to the presumption, there was not a master list of increases.  However, as all increases must be approved by the Executive Office, individuals approved for an increase were provided by the Executive Office.

8.    Any increases were recommended in the best interest of the Office of the Secretary of State and in accordance with the Secretary of State Pay Plan.

Plaintiff's First Motion, Exhibit 14, Roth's Letter.

Altman claims a violation of her due process right under the Fourteenth Amendment of the United States Constitution. She argues that her property rights flow from the Pay Plan of the Secretary of State, which is part of the Administrative Code of the State of Illinois and authorized by the Secretary of State Merit Employment Code. She contends that Defendant Benigno's failure to abide by the Pay Plan, with respect to both the December 2002 and December 2003 increases, is a deprivation of her property rights. She argues that Defendant violated her rights to due process by taking away the salary increases without notice and hearing. Altman claims that Defendant Benigno initiated a conspiracy with other individuals to deprive her of her property rights.

Defendant argues that Altman has no property interest in either the December 2002 or December 2003 salary increase because he never authorized such an increase for Altman. In the alternative, Defendant Benigno argues that even if Altman has such an interest: (1) she has failed to exhaust her administrative remedies, (2) her claim is barred by the doctrine of qualified immunity, and (3) he was not personally involved in committing any constitutional violation against Altman.

Both parties filed a motion for summary judgment. For the reasons

16

set forth below, Defendant's Motion for Summary Judgment is ALLOWED, and Plaintiff's Motion for Summary Judgment is DENIED.  As explained below, Altman's claim of entitlement to the process by which her salary increase is authorized under the Pay Plan is not a constitutionally protected property interest.  Furthermore, Altman does not a have legitimate claim of entitlement to a salary increase because the Pay Plan provides that an employee's salary may be adjusted downward without cause and without notice or hearing, if in the best interests of the Secretary's Office.  Thus, there was no violation of due process.

ANALYSIS

At summary judgment, the movant must present evidence that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).  The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain.  Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).

I.      DUE PROCESS

The Due Process Clause of the Fourteenth Amendment protects life, liberty, and property.  U.S. Const. amend. XIV, § 1.  The present case raises a claim of denial of a property interest without due process of law.  The Supreme Court has clearly indicated "that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571-72 (1972).   In Roth, the court further explained that property interests are not created by the Constitution, but "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Id. at 577.  The sources from which an individual derives his or her property interest are not only limited to state law, but include "regulation, municipal ordinance, or an express or implied contract--those rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Crull v. Sunderman, 384 F.3d 453, 460 (7th Cir. 2004) (internal quotations omitted).  A property interest is not legally cognizable unless a person has a legitimate claim of entitlement to the benefit.  Roth, 408 U.S. at 577.

Simply, a unilateral expectation of the benefit will not suffice nor will an abstract need or desire for it.  Id.

Altman has the burden to show that she had a property interest in the December 2002 and December 2003 salary increases which would trigger the protections provided by the Due Process Clause.  See Crull, 384 F.3d at 460.  Altman relies on the procedures set forth in the Pay Plan of the Secretary's Office as the source from which she derives her property rights.  The Pay Plan is part of the Administrative Code of the State of Illinois and has been adopted pursuant to the Secretary of State Merit Employment Code.  Plaintiff's Amended Response to Defendant's Motion for Summary Judgment (d/e 96) (Plaintiff's Response) at 1.  As explained earlier, the Pay Plan sets forth procedures that the Secretary's Office must follow in matters of employee pay administration.  Altman fails to identify any particular provision in the Pay Plan that provides her a property interest in her salary increases.  She merely argues that, because Defendant Benigno failed to abide by the terms of the Pay Plan with respect to the 2002 and 2003 salary increases, he violated her property interest in her salary increases.

However, Altman had no property interest in a raise before it was

conferred.  General salary increases were given only at the discretion of the Secretary of State, and Altman had no claim of entitlement to one before it was conferred.  <u>Pay Plan</u>, § 9.00 A.  Altman also had no claim of entitlement to a merit increase in salary.  Those merit increases were dependent on an evaluation of the employee's performance, the availability of funds, and possibly the approval of a Departmental Compensation Review Committee.  <u>Id.</u> § 9.00 B.  The Court can find no provision in the Pay Plan that gives Plaintiff a property interest in the salary increases.[5]  Any raise was contingent on a number of factors.

In addition, the Pay Plan provided that "[a]n employee may receive a downward adjustment in base salary for the purpose of 'correcting a previous error or oversight' or when required 'in the best interests of the department and the Office of the Secretary of State.'"  <u>Pay Plan</u> at 17.  This provision clearly indicates that an employee's salary can be adjusted downward without cause when in the "best interests" of the Secretary's Office.  Thus, Altman cannot claim that the Pay Plan creates a property interest in a salary increase when the Pay Plan itself grants broad discretion

---

[5]Sections 9.00 and 11.00 of the Pay Plan were not in the materials submitted to the Court previously, in connection with the Motion to Dismiss.

to the Secretary's Office to make downward salary adjustments.   See Omosegbon v. Wells, 335 F.3d 668, 675 (7th Cir. 2003) (finding that plaintiff had no protectable property interest in being reappointed to his job position because the employment contract granted broad discretion to employer in making reappointment decisions).  Thus, the Pay Plan does not create any substantive entitlement to a salary increase, and, therefore, Altman lacks a protectable property interest.

The Seventh Circuit has dealt with a similar issue in Swartz v. Scruton, 964 F.2d 607 (7th Cir. 1992).  In Swartz, a state university professor brought suit against his employer and two of its officials alleging that the defendants violated his Fourteenth Amendment substantive due process rights when they allegedly gave him a lesser merit increase by failing to calculate his merit pay increase under the method outlined in the Department Plan.  Id. at 608.  In calculating the plaintiff's merit increase, one of the defendants decided not to follow the procedures set forth in the Department Plan and instead calculated Plaintiff's merit increase under a new allocation formula he had devised.  Id. at 609.  The plaintiff argued that his merit increase would have been higher had the defendant used the method outlined in the Department Plan.  Id.  In analyzing the due process

claim, the Seventh Circuit held that the plaintiff's "asserted legitimate claim of entitlement to the process--the 'method'--by which his merit pay increase is determined is not a constitutionally protected property interest." Id. at 610.  It further stated that the plaintiff did not "enjoy, by virtue of a contract, rule or understanding, a legitimate claim of entitlement to a merit pay increase per se.  While [the plaintiff] may have an expectation of *a* merit pay increase, he has no property right, contractual or otherwise, to a specific amount of a merit pay increase because his merit pay is based on multiple of layers of contingency." Id. (citing Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir. 1983)).

Applying the Seventh Circuit's reasoning, Altman's reliance on the Pay Plan as the basis of her asserted property interest does not implicate the protections of the Due Process Clause.  The Pay Plan merely establishes  a method or process that the Personnel Department must follow in implementing decisions related to salary.  The undisputed facts show that Benigno was the individual who authorized the salary increases in December 2002 and December 2003.  The undisputed facts further show that Defendant Benigno never authorized any salary increase for Altman in either December 2002 or December 2003.  She cannot claim that she was

denied due process when Benigno failed to abide by the procedures set forth in the Pay Plan in authorizing the December 2002 and December 2003 salary increases for others because she had no property interest in the salary increase.[6]  Accordingly, Altman was not denied a property interest when Defendant Benigno, in violation of the Pay Plan, failed to conduct written performance evaluations in authorizing discretionary increases for certain other merit compensation employees.  Likewise, Altman was not denied a property interest when the Personnel Department, as a time saving measure, decided to enter a "general increase" for all merit compensation employees and then subtract the increase from those who were not to receive it, including Altman, in December 2002 and December 2003.  See Roth Affidavit, ¶ 3.  Altman was also not deprived of a property interest when the Personnel Department relabeled the 2002 and 2003 salary increases as

---

[6]The Court has considered whether Altman's contentions would constitute a claim for denial of equal protection of the law, even though she has raised no such claim.  Ryan v. Illinois Dept. of Children & Family Services, 185 F.3d 751, 764 (7th Cir. 1999).  The Court notes, however, that there is no evidence that Altman is a member of a protected class or that she was singled out for harsh treatment by Benigno out of a vindictive animus.  On each occasion that she was denied a raise, 30-40 other merit or exempt employees were also denied raises by Benigno, and in December 2002, Benigno denied himself a raise.  Defendant's Motion for Summary Judgment, Exhibit L, Affidavit of Diana Underwood, ¶¶ 3-4.  Finally, no evidence has been presented to show that Altman was similarly situated to those who did receive raises.  The facts do not support an equal protection claim.

"salary adjustments" when all of the requirements to enter a salary adjustment were not satisfied.  Id. ¶¶ 5-7.  Furthermore, Altman was not denied a property interest in this case, even if she was given a general increase which was subsequently taken away.  The Pay Plan authorizes a downward salary adjustment without cause and without notice or hearing.  Since the Secretary's Office may make downward salary adjustments without cause, Altman has no property interest in her salary increases.  While Altman may have a unilateral expectation of a salary increase, she does not have a legitimate claim of entitlement to such an increase.

Even if the Court were to assume that the procedures set forth in the Pay Plan created an implied contract whereby any salary increases or decreases must have been determined in accordance with the Pay Plan, that right created by such a contract does not implicate the Due Process Clause.  See Swartz, 964 F.2d at 610.

> [Indeed], [e]ven if [the plaintiff] had a good claim for breach of contract against [the defendant], it would not follow that [she] had a constitutional claim for deprivation of property.  Not every contract right is property . . . . [A] contract which merely creates a right to specified procedures does not create an entitlement upon which a claim of deprivation of property without due process of law can be founded.  To bring a case within the orbit of the property concept, there must be a substantive entitlement.

Id. at 610-11 (quoting Campbell v. City of Champaign, 940 F.2d 1111, 1113 (7th Cir. 1991)).  Based on the reasons set forth above, Altman's reliance on Swick v. City of Chicago is misplaced.  Swick, 11 F.3d 85 (7th Cir. 1993).  In Swick, the Seventh Circuit held that a job action that results in a provable pecuniary harm implicates the Due Process Clause.  Id. at 87. The facts of Swick are distinguishable from this case.  In Swick, a police officer, who was involuntarily placed on sick leave, without incurring any pecuniary harm, relied on a state law as the basis from which he derived his property interest in his employment, arguing that being involuntarily placed on sick leave was equivalent of being "suspended" from his job.  Id. at 86. The state law provided that "a nonprobationary police officer may not be 'removed or discharged, or suspended for more than 30 days except for cause.'"  Id.  (quoting 65 ILCS 5/10-1-18.1 (1993 Supp.)).  The Seventh Circuit held that such a job action did not trigger the protections afforded by the federal constitution because the job action did not financially harm the plaintiff in any way.

In the present case, Altman does not complain that she was removed, discharged, or suspended from her job.  She only complains that Benigno's failure to authorize the December 2002 and December 2003 salary increases

25

in accordance with the procedures set forth in the Pay Plan violates her rights to due process.  However, the undisputed facts show that Benigno never authorized any salary increase for Altman in December 2002 and December 2003; the fact that the transactions unit erroneously entered the raise for her in the computer and then retracted it did not vest Altman with a property right to the raise.  Moreover, Benigno's failure to authorize the December 2002 and December 2003 pay raises in accordance with the procedures set forth in the Pay Plan did not trigger the Due Process Clause.

Similarly, Altman's reliance on Toney v. Burris, for the proposition that a public employee has a property interest in wages, is misplaced.  The facts of Toney are clearly distinguishable from the instant case.  In Toney, a state employee brought an action against the Comptroller of the State of Illinois because the latter was taking money from the plaintiff's pay check to pay student loans pursuant to a state statute.  Toney, 829 F.2d 622 (7th Cir. 1987).  The Seventh Circuit held that, because the money had been rightfully earned by the plaintiff, he had a property interest in that portion of his salary that was being deducted from his pay check.  Id. at 625.  In the present case, the undisputed facts show that Defendant Benigno never authorized any salary increase for Altman in December 2002 and December

2003.  The method or the process by which Defendant Benigno authorized such increases for others, albeit improper or in violation of the Pay Plan, did not constitutionally injure Altman.  Similarly, the process by which the Personnel Department entered the salary transactions into the computer system in violation of the Pay Plan did not constitutionally injure Altman.  Clearly, a clerical decision was made to enter the raises as general raises on the computer for everyone and then redact them from the 32-40 people not receiving them.  This clerical step did not create a constitutionally protected property interest in the raises for Altman.

Viewing the evidence in the light most favorable to Defendant Benigno, the Court finds that Plaintiff has failed to establish a due process violation.  Therefore, Plaintiff's Motion for Summary Judgment with respect to the due process claim is denied.

Turning to Defendant's Motion for Summary Judgment with respect to the due process claim, the Court views the evidence presented in the light most favorable to Altman.  As noted earlier, Altman's reliance on the Pay Plan as the source from which her property rights flow is misplaced.  The procedures set forth in the Pay Plan do not implicate the rights protected by the Constitution.  See Swartz, 964 F.2d at 610.  Even if Defendant Benigno

27

authorized the December 2002 and December 2003 salary increases in violation of the Pay Plan, the Due Process Clause is not implicated because the method or the process by which Altman's salary increase is determined is not a constitutionally protected property interest. Id. Furthermore, Altman fails to identify a state statute, rule, or law that gives her a property interest in her salary increase. Indeed, the Pay Plan provides that the Secretary's Office may make downward salary adjustments without cause and without notice or hearing. Altman argues that she received general salary increases in December 2002 and December 2003. Defendant relies on the evidence in the record to argue that Altman did not get the salary increases. See Benigno Affidavit, ¶¶ 2-6; Roth Affidavit, ¶¶ 3-7.

In support of her argument, Altman has presented as evidence two computer printout forms indicating that she received a general increase in 2002 and 2003. 2002 Computer printout form; 2003 Computer printout form. The printout forms do not appear to be an official Secretary of State's Personnel Action form. They also do not contain any authorizing signatures. Written across the 2002 printout form are the words: "No Increase Given." 2002 Computer printout form. Altman has also presented as evidence a Personnel Action form indicating that she received a general

increase in December 2003, but the increase was taken away simultaneously with a salary adjustment.  Personnel Action form.  Based on the Personnel Action form, it appears that the increase was taken away by the same document and as part of the same transaction.  Id.  These forms are not enough to create a genuine issue of fact as to whether Altman received salary increases in December 2002 and December 2003.

Rather, the undisputed evidence shows that Benigno was the individual who made the decision regarding the December 2002 and December 2003 salary increases.  Benigno Affidavit, ¶ 2.  Benigno states that, in making the decision, he specifically instructed the Personnel Department not to give Altman a pay increase in December 2002 and December 2003.  Id. at ¶¶ 3-4.  The undisputed evidence also shows that as a time saving measure, the Personnel Department initially entered increases for all employees and then, as part of the same transaction, took away the increases from those employees who were not authorized to receive them.  Roth Affidavit, ¶¶ 5-7.  Moreover, even if these computer forms were sufficient to create an issue of fact as to whether Altman received salary increases in 2002 and 2003, she has no property interest in such increases because the Pay Plan specifically authorizes downward salary adjustments

29

without cause and without notice or hearing.

Accordingly, Defendant's Motion for Summary Judgment with respect to the due process claim is ALLOWED.

## II.   CIVIL CONSPIRACY

Altman claims that Defendant Benigno engaged in a civil conspiracy with other employees at the Secretary's Office to deprive her of the benefits of the 2002 and 2003 salary increases. She argues that "Benigno initiated a course of conduct with others whereby Plaintiff Altman was deprived of her property rights. [Benigno] is responsible for all that occurred." Plaintiff's Motion at 20. In order to prove a civil conspiracy claim under § 1983, Altman "must allege and prove both a conspiracy and an actual deprivation of [constitutional] rights." Hampton v. Hanrahan, 600 F.2d 600, 622 (7th Cir. 1979). Because Altman has failed to establish a due process violation in this case, the Court need not evaluate the civil conspiracy claim. To the extent that Altman is making a state law claim for civil conspiracy, the Court declines to exercise supplemental jurisdiction.

## CONCLUSION

THEREFORE, Plaintiff's Second Motion for Summary Judgment (d/e 90) is DENIED, but Defendant's Motion for Summary Judgment (d/e

56) is ALLOWED.  Because there is no due process violation in this case, the case is dismissed.  All pending motions are denied as moot.  The case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   February 28, 2006.

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE